UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| UNITED STATES OF AMERICA, | Case No. 2:21-cr-00104-DCN |
|---|---|
| Plaintiff, | |
| v. | MEMORANDUM DECISION AND ORDER |
| NICHOLAS MICHAEL MCROBERTS, | |
| Defendant. | |

## I. INTRODUCTION

Pending before the Court is Defendant Nicholas McRoberts's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A). Dkt. 36. The Government has filed an opposition to McRoberts's Motions. Dkt. 39. McRoberts filed a reply brief restating his arguments and requesting counsel. Dkt. 40. The matter is ripe for the Court's consideration.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon review, and for the reasons set forth below, the Court DENIES the Motion.

## II. BACKGROUND

On September 22, 2021, after pleading guilty to one count of possession of an unregistered firearm, the Court sentenced Nicholas McRoberts to 30 months of

incarceration followed by three years of supervised release. Dkt. 31. He is currently incarcerated at Federal Correctional Institution Sheridan ("FCI Sheridan") in Sheridan, Oregon, with an anticipated release date of October 26, 2023. Dkt. 36-3.

As required, McRoberts first petitioned the Warden at FCI Sheridan for release. Dkt. 36-1, at 3–5. The Warden denied the request. Dkt. 40, at 7. Thus, because at least 30 days have passed since the submission of the request, McRoberts may petition the Court for relief. 18 U.S.C. § 3582(c)(1)(A). On October 12, 2022, McRoberts filed the instant Motion for Compassionate Release. Dkt. 36. McRoberts bases his request on the hardship that COVID-19 precautions have imposed on those incarcerated at FCI Sheridan (including extended periods of cell confinement), his demonstration of good behavior and commitment to rehabilitation, and the deteriorating condition of his wife. Dkt. 36, at 2. The Government filed an opposition to the motion on November 7, 2022. Dkt. 39. McRoberts replied on November 23, 2022. Dkt. 40.

### III. LEGAL STANDARD

McRoberts seeks compassionate release under the First Step Act ("FSA"), newly amended 18 U.S.C. § 3582(c)(1)(A), which allows a court to modify a sentence under certain circumstances.[1] In order to grant compassionate release, a district court must, as a threshold matter, determine whether a defendant has exhausted his or her administrative

---

[1] "Prior to the passage of the FSA, only the Director of the Bureau of Prisons . . . could file a motion for compassionate release, and that very rarely happened." *United States v. Shields*, 2019 WL 2359231, at *1 (N.D. Cal. June 4, 2019) (quoting *United States v. Gutierrez*, 2019 WL 1472320, at *1 (D.N.M. Apr. 3, 2019). The FSA amended 18 U.S.C. § 3582(c)(1)(A) to permit modification of a term of imprisonment upon motion of the Director of the BOP or upon motion of the defendant after the defendant has exhausted his/her administrative rights. FSA, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).

MEMORANDUM DECISION AND ORDER - 2

remedies. *Id*. Next, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction," and the reduction is "consistent with applicable policy statements" issued by the U.S. Sentencing Commission.[2] *Id*. If the latter criteria are met, the district court must then consider the sentencing factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable. *Id*.; *United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019).

## IV. DISCUSSION

**A. Exhaustion of Administrative Remedies**

The FSA allows a motion for modification to be made by either the Director of the BOP, or by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). In addition, "[e]xhaustion occurs when the BOP denies a defendant's [motion for compassionate release]." *United States v. Mondaca*, No. 89-cr-0655 DMS, 2020 WL 1029024, at *2 (S.D. Cal. March 3, 2020).

McRoberts submitted a request for Compassionate Release with the Warden at SPC Atwater on July 24, 2022. Dkt. 36-1, at 4. The warden denied his request on August 2, 2022. Dkt. 36, at 3. McRoberts was subsequently transferred to FCI Sheridan, and he

---

[2] Congress did not define what constitutes "extraordinary and compelling" reasons; instead, it deferred consideration of the matter to the Sentencing Commission. *Rodriguez*, 424 F. Supp. 3d at 681 (citing 18 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.").

MEMORANDUM DECISION AND ORDER - 3

submitted a request for Compassionate Release with the Warden of Sheridan on September 6, 2022. Dkt. 36-1, at 5. The Warden denied the request. Dkt. 40, at 7.[3] Based on the denial of the request, the Court finds he has exhausted his administrative remedies and may petition the court.

### B. Extraordinary and Compelling Reasons

Having determined that McRoberts has exhausted his administrative remedies, the Court must next consider whether "extraordinary and compelling reasons" warrant a permanent reduction in his sentence, and whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). McRoberts bears the burden of establishing that compelling and extraordinary reasons exist to justify compassionate release. *United States v. Holden*, 452 F. Supp. 3d 964, 969 (D. Or. Apr. 6, 2020).

Before passage of the FSA, the Sentencing Commission limited "extraordinary and compelling reasons" to four scenarios: (A) medical conditions of the defendant; (B) age of the defendant; (C) certain family circumstances; and (D) as determined by the Director of the BOP, other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories. U.S.S.G. § 1B1.13 Application Note 1.

However, the Sentencing Commission "never harmonized its policy statements with the FSA." *Rodriguez*, 424 F. Supp. 3d at 680 (quoting *United States v. Brown*, 411 F. Supp.

---

[3] McRoberts has not provided documentation of these denials, but the Court accepts his representations.

MEMORANDUM DECISION AND ORDER - 4

3d 446, 449 (S.D. Iowa 2019)). "Rather, the outdated policy statements still assume compassionate release 'may be granted only upon motion by the Director of the Bureau of Prisons.'" *Brown*, 411 F. Supp. 3d at 449 (quoting U.S.S.G. § 1B1.13 Application Note 1). This assumption is no longer consistent with the law under the FSA, which allows defendants to seek relief directly from the court. As such, the question of whether district courts are strictly bound by the Sentencing Commission's statements in U.S.S.G. § 1B1.13 when considering prisoners' motions for compassionate release—as they are when considering motions by the Director of the BOP—was momentarily left open. The Ninth Circuit has recently answered that question in the negative. *See United States v. Aruda*, 993 F.3d 797, 801 (9th Cir. 2021) (holding that "the current version of U.S.S.G. § 1B1.13 is not an 'applicable policy statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant."). Therefore, the guidelines in U.S.S.G. § 1B1.13 "may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id.*

Nonetheless, McRoberts's motion lays out five circumstances he believes fall under the specific scenarios set out in U.S.S.G. § 1B1.13 in this case: (1) a compelling reason based on his wife's health, (2) a compelling reason based on the risks posed by COVID-19, (3) an extraordinary reason based on his eligibility under the CARES Act, (4) an extraordinary reason based on the amount of First Step Act Earned Time Credit, and (5) an extraordinary reason based on his record of post-sentence rehabilitation efforts. *See generally,* Dkt. 36.

First, McRoberts argues that the declining health of his wife falls under U.S.S.G. 1B1.13, Application Note 1(C)(ii) (regarding the incapacitation of the defendant's spouse).

MEMORANDUM DECISION AND ORDER - 5

The provision commentary indicates eligibility for consideration requires the defendant to demonstrate they are the *only* available caretaker for their spouse. McRoberts has not demonstrated that he is the sole available caretaker, as his wife has utilized the support of her adult children while he has been incarcerated. Dkt. 36-1, at ¶ 12. Additionally, letters sent in support of the defendant at sentencing indicate individuals ready and willing to help the family during his incarceration, specifically McRoberts's father-in-law, Adrian Finkelstein. Dkt. 22-2, at 1. While perhaps none of the alternatives are ideal candidates, all are available to provide care while McRoberts is incarcerated. Therefore, McRoberts has failed to demonstrate a compelling argument for compassionate release on the basis of being the sole available caretaker for his wife's illness.

Second, McRoberts cites the threat of contracting COVID-19, in conjunction with an elevated risk of severe illness due to his age and body mass index ("BMI"), as an extraordinary and compelling circumstance necessitating compassionate release under the "medical condition" scenario in subdivision (A) of U.S.S.G. 1B1.13, Application Note 1.[4] Dkt. 36, at 2.

---

[4] The "medical condition of the defendant" may constitute an extraordinary and compelling reason for release where:

    (A)    Medical Condition of the Defendant.—

    (i)    The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii)    The defendant is—

(continued)

MEMORANDUM DECISION AND ORDER - 6

As an initial matter, the Court notes that McRoberts's medical conditions likely do place him at a higher risk of contracting a severe form of COVID-19. McRoberts is 5 feet 10 inches tall, weighs 180 pounds, with a BMI of 25.8. Dkt. 36, at 2. The CDC lists various conditions, including a BMI above 25 kg/m$^2$, as a health condition that can place individuals at an increased risk of severe illness from COVID-19.[5] Further, McRoberts points to the COVID-19 pandemic (in general) as a reason for his release. *See generally,* Dkt. 36, at 5-6. Concern for the possibility of exposure to COVID-19 on its own, however, does not meet the extraordinary and compelling criteria. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Even considering his health conditions, McRoberts's risk of serious illness or death from COVID-19 is relatively low because of the efforts of the BOP and its modified operations plan.[6] Indeed, it was because of the BOP's operation plan that McRoberts was fully vaccinated as of December 26, 2021, against COVID-19. Dkt. 39-1, at 2. McRoberts received both doses of the COVID-19 Pfizer vaccine. *Id.*; *United States v. Kim*, 2021 U.S.

---

(I)     suffering from a serious physical or medical condition,

(II)    suffering from a serious functional or cognitive impairment, or

(III)   experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, Application Note 1(A).

[5] *CDC Updates, People with Certain Medical Conditions,* (Updated Dec. 6, 2022) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

[6] *Coronavirus*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Jan. 19, 2023).

MEMORANDUM DECISION AND ORDER - 7

Dist. LEXIS 86830, at *6–7 (D. Haw. May 6, 2021) (denying the defendant's motion because he was fully vaccinated, and there were no active COVID-19 cases at the facility where he was located); *United States v. Stewart*, 2021 U.S. Dist. LEXIS 99588, at *7 n.3 (D.N.J. May 25, 2021) (denying defendant's compassionate release motion because the defendant had begun the vaccination process). "Fully vaccinated people have a significantly reduced risk of COVID-19 infection . . . and those who do get infected 'are at a substantially reduced risk of severe illness and death from COVID-19 compared with unvaccinated people.'" *United States v. Austin*, 2021 WL 3669318 (D. Idaho Aug. 18, 2021) (quote CDC guidance). The Government argues, and the Court agrees, that McRoberts's vaccination status weighs heavily against a finding of extraordinary and compelling circumstances.

Additionally, there is no evidence to suggest that McRoberts would be at lower risk to contract COVID-19 if he were released. Multiple courts have denied compassionate release to prisoners, even those with high-risk medical conditions, because many of them would likely be less-exposed to the pandemic by remaining at the prison. *See United States v. Singui*, 2020 WL 2523114, at *4 (C.D. Cal. May 12, 2020) (denying compassionate release to inmate with diabetes, high blood pressure, and high cholesterol; observing that "there is little evidence that [the defendant] is presently at greater risk of contracting the virus at MDC than in the general population: MDC has no current reported infections, inmates at MDC are housed in separate units, and the staff at MDC has undertaken a variety of interventions [] to prevent the virus from reaching and spreading within the prison"); *United States v. Hembry*, 2020 WL 1821930, at *2 (N.D. Cal. Apr. 10, 2020) (denying

motion for inmate with diabetes based on COVID-19 risks where, *inter alia*, the incarcerated movant was "housed at a facility with no reported infections"). Indeed, as of January 17, 2023, FCI Sheridan is reporting one active case among inmates and four active cases among staff.[7] McRoberts has requested release to home confinement in Coeur d'Alene, Idaho. From the start of the pandemic through January 18, 2023, Kootenai County has had roughly 46,691 cases and about 655 deaths due to COVID-19.[8] The risk of contracting the virus is not lower in the community in which he seeks to live.

Third, McRoberts seeks release to home confinement based on eligibility under the CARES Act. This request is outside the jurisdiction of the court. The Bureau of Prisons ("BOP") may receive recommendations from the sentencing court, but the discretionary placement is solely within the purview of BOP and is not reviewable by any court. *See* 18 U.S.C. § 3621(b). BOP retains custody of an inmate in home confinement. *United States v. Ko*, 739 F.3d 558, 561 (10th Cir. 2014). Additionally, "[t]he Bureau (and under the CARES Act, the Attorney General) has plenary control over its inmates' placement." *United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021) (internal citations omitted). A district court cannot order a new placement. *Id.* Therefore, this Court declines to review the merits of the request.

Fourth and fifth, McRoberts seeks a reduction in sentence based on his First Step

---

[7] Federal Bureau of Prisons, COVID-19 Information, available at https://www.bop.gov/coronavirus/ (last accessed January 17, 2023).

[8] Idaho Division of Public Health, COVID-19 Dashboard. Available at https://public.tableau.com/app/profile/idaho.division.of.public.health/viz/DPHIdahoCOVID-19Dashboard/Home (last updated January 13, 2023).

MEMORANDUM DECISION AND ORDER - 9

Act Earned Time Credit and rehabilitation efforts. As with his third request, his request concerning earned credit cannot be resolved through a motion for compassionate release. Earned Time Credit is administered and calculated by the BOP under the First Step Act. 18 U.S.C. §3632(4). Therefore, any challenges to the time earned and how it is applied should be made through the Bureau of Prisons Administrative Remedy Program. An inmate properly exhausts his remedies by following the review process and complying with agency deadlines and procedures. *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). The requirement of the exhaustion of administrative remedies gives an agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." *Id.* (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). There is no evidence indicating McRoberts has participated in the BOP Administrative Remedy Program and exhausted his administrative remedies. Therefore, the request cannot be considered by the Court. Additionally, while the Court applauds McRoberts rehabilitative efforts, success on that front alone cannot justify an early release.

The Government also argues that the 18 U.S.C. § 3553(a) factors weigh against McRoberts's release.[9] Dkt. 39, at 12. The Court agrees. McRoberts has failed to

---

[9] Factors To Be Considered in Imposing a Sentence.—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—[. . .]

    (2) the need for the sentence imposed—
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

(continued)

demonstrate how release reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense. As outlined by the Presentence Investigation Report, McRoberts knew that as a convicted felon, he was prohibited from owning or possessing firearms. Dkt. 22, ¶ 7. Although only charged with possession of an unlicensed short barrel rifle, McRoberts forfeited a total of 16 firearms in his possession at the time of arrest. *Id.* There is no indication that he intended to stop his illegal behavior had he not been apprehended, and he has failed to show how his time served is sufficient to adequately deter future criminal conduct. The Court agrees with the Government's argument that the public is currently best protected by McRoberts's continued incarceration. As such, all four factors set forth in U.S.C. § 3553(a)(2) weigh against releasing McRoberts early.

In sum, the Court finds that McRoberts has exhausted his administrative remedies.[10] That said, he has failed to substantively demonstrate an "extraordinary and compelling reason" for his release and has failed to show that such a reduction in his sentence is consistent with the goals of the 18 U.S.C. § 3553(a) sentencing factors. Weighing all relevant factors, the Court cannot depart from its prior sentence and release McRoberts at

---

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553(a).

[10] McRoberts has exhausted his administrative remedies for the Motion for Compassionate Relief. Some of the arguments within the motion that cannot be addressed by this court have additional administrative steps that can be taken.

MEMORANDUM DECISION AND ORDER - 11

this time. Accordingly, the Court must DENY McRoberts's motion.

Finally, with respect to McRoberts's passing reference regarding the appointment of counsel, the Court notes there is no constitutional right to appointed counsel in post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("The right to appointed counsel extends to the first appeal of right, and no further."). Instead, the decision whether to appoint counsel in post-conviction proceedings (including requests for compassionate release) rests with the discretion of the district court. *United States v. Harrington*, 410 F.3d 598, 600 (9th Cir. 2005). In this case, the Court has reviewed the materials and does not find any circumstances warranting the appointment of Counsel. Accordingly, the Court DENIES this request as well.

## V. ORDER

The Court HEREBY ORDERS:

1. McRoberts's Motion for Compassionate Release (Dkt. 36) is DENIED.

DATED: January 31, 2023

David C. Nye
Chief U.S. District Court Judge